Thiago Coelho (SBN 324715)
thiago@wilshirelawfirm.com
Cinela Aziz (SBN 318192)
cinela@wilshirelawfirm.com
Jessica Behmanesh (SBN 336128)
jbehmanesh@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff*
*and the Putative Class*

# UNITED STATED DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIPRA KOCHAR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.:<br><br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

*"Baby food manufacturers hold a special position of public trust.  Consumers believe that they would not sell products that are unsafe."* [1]

- **Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives**

---

[1] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## TABLE OF CONTENTS

2    I.       SUBSTANTIVE ALLEGATIONS...........................................................1

3    II.      THE PARTIES.................................................................................14

4    III.     JURISDICTION AND VENUE............................................................15

5    IV.      FACTUAL ALLEGATIONS.................................................................15

6    V.       CLASS ACTION ALLEGATIONS........................................................26

7    VI.      CAUSES OF ACTION........................................................................29

8             A.      FIRST CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION.....29

9             B.      SECOND CAUSE OF ACTION – FRAUDULENT MISREPRESENTATION

10                    .....................................................................................30

11            C.      THIRD CAUSE OF ACTION – VIOLATION OF THE CONSUMER LEGAL

12                    REMEDIES ACT……………………………………….............…………..32

13            D.      FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA'S FALSE

14                    ADVERTISING LAW.............................................................34

15            E.      FIFTH CAUSE OF ACTION – VIOLATION OF THE CALIFORNIA UNFAIR

16                    COMPETITION LAW ...........................................................36

17            F.      SIXTH CAUSE OF ACTION – FRAUD .......................................40

18            G.      SEVENTH CAUSE OF ACTION – CONSTRUCTIVE FRAUD .................41

19            H.      EIGHTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY

20                    .....................................................................................43

21            I.      NINTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY

22                    .....................................................................................44

23            J.      TENTH CAUSE OF ACTION – QUASI-CONTRACT / UNJUST

24                    ENRICHMENT ...................................................................45

25   VII.     PRAYER FOR RELIEF......................................................................46

26   VIII.    DEMAND FOR A JURY TRIAL...........................................................47

27

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SHIPRA KOCHAR ("Plaintiff"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, brings this Class Action Complaint based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

## I.    SUBSTANTIVE ALLEGATIONS

1. Defendant WALMART, INC. ("Defendant"), a Delaware corporation headquartered in Bentonville, Arizona, formulates, develops, manufactures, labels, distributes, markets, advertises, and sells baby foods under the name "Parent's Choice" throughout the State of California, as well as the United States more broadly.

2. Plaintiff is a reasonable consumer who purchased Defendant's baby foods reasonably believing that such baby foods are safe, nutritious, and free from harmful toxins, contaminants, and chemicals.

3. As a result of Defendant's negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of dangerous substances in its baby foods, Plaintiff and the Class Members were induced to purchase Defendant's baby foods, which are not healthy for consumption by babies as advertised. Plaintiff and the Class Members were induced to feed their babies dangerous foods containing toxic heavy metals, such a lead, arsenic, cadmium, and mercury, and the full extent of the harm caused to their babies is not yet known.

4. Consumers of baby foods, including Plaintiff, place their trust in manufacturers like Defendant, believing they sell baby foods that are safe, nutritious, and free from harmful toxins, contaminants, and chemicals. Consumers expect that the food they feed to infants and toddlers is free of toxic heavy metals such as lead, arsenic, cadmium, and mercury – substances known to have significant and dangerous health consequences.

5. Reasonable consumers lack the scientific knowledge necessary to determine whether Defendant's products contain toxic heavy metals or to ascertain the true nature of the ingredients and quality of the products Defendant sells. Reasonable consumers therefore must – and do – rely on Defendant to honestly report what its various products contain.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

6.  On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee"), released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury."[2]

7.  On November 6, 2019, the Subcommittee made requests for internal documents and test results from some of the biggest baby food manufacturers in the nation, including Defendant.[3]

8.  Of the seven companies contacted, four responded to the Subcommittee's requests.[4] Defendant was one of three manufacturers who refused to cooperate.[5] With regard to Defendant's refusal to cooperate with the Subcommittee's request, the Subcommittee noted that it was "greatly concerned that [Walmart's] lack of cooperation might be obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products."[6] Indeed, the Subcommittee noted that "Walmart's evasion is concerning, as even limited independent testing has revealed the presence of toxic heavy metals in its baby food."[7]

9.  After reviewing the internal documents and test results it received, the Subcommittee made the disturbing discovery that "commercial baby foods are tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[8]

10. Exposure to toxic heavy metals in large amounts has been shown to cause cognitive decline and thwart cognitive development, especially in children.[9] The report further claimed that exposure can lead to "diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children."[10]

---

[2] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[3] Id.
[4] Id. at 2.
[5] Id.
[6] Id.
[7] Id. at 43.
[8] Id. at 2.
[9] Id.
[10] Id.

2

COMPLAINT AND DEMAND FOR JURY TRIAL

11. Arsenic is a naturally occurring element found in food, water, air, and soil.[11]  In recent years, healthcare professionals have grown "increasingly concerned about the more subtle and long-range health effects of low-level exposures to humans, especially for infants and children exposed to arsenic in water and some foods, such as rice-based products, during sensitive windows of development."[12]  Arsenic, in general, can negatively impact one's skin, nervous system, respiratory system, cardiovascular system, liver, kidney, bladder and prostate, immune system, endocrine system, and developmental processes.[13]

12. Lead is also a naturally occurring element.[14]  Lead has been used as an ingredient in paint, gasoline, ceramics, plumbing pipes, and batteries.[15]  Lead is dangerous – so much so that the federal government has phased out its use in gasoline and house paint.[16]  Today, lead is primarily found in contaminated soil, old paint, dust, and contaminated drinking water.[17]  With respect to lead exposure to children, the National Institute of Environmental Health Sciences ("NIEHS") warns that exposure to lead can have a wide range of effects on a child's development and behavior, and that many effects are permanent.[18]  According to the NIEHS, blood lead levels at or less than 10 micrograms of lead per deciliter of blood ("µg/dL")  are associated with "increased behavioral effects, delayed puberty, and decreased hearing, cognitive performance, and postnatal growth or height."[19]  Health effects are found even at low blood lead levels of less than 5 µg/dL.[20]  "Such effects may include diminished IQ scores and academic achievement, and increased behavioral problems and attention-related behaviors such as attention deficit hyperactivity disorder."[21]  According to the Centers for Disease Control ("CDC"), any child with

---

[11] *Arsenic*, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES,
https://www.niehs.nih.gov/health/topics/agents/arsenic/index.cfm.
[12] *Id.*
[13] *Id.*
[14] Lead, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES,
https://www.niehs.nih.gov/health/topics/agents/lead/index.cfm.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* citing Jianghong Liu et al., *Blood Lead Levels and Children's Behavioral and Emotional Problems: A Cohort Study*, JAMA PEDIATRICS, 168 (8) at 737-745 (Aug. 1, 2014),
https://jamanetwork.com/journals/jamapediatrics/fullarticle/1884486.
[20] *Id.*
[21] *Id.*

3

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

more than 5 µg/dL of lead in their blood may be considered at risk of these negative health effects and public health actions should be initiated.[22]

13. According to a study published by the United Nations Children's Fund ("UNICEF") in 2020, lead poisoning is a serious problem affecting children globally.[23]  The study found that up to 800 million children have blood lead levels at or above 5 µg/dL.[24]

14. Mercury is a naturally occurring metal, and it is toxic for humans.[25]  Metallic mercury can frequently be found in fluorescent light bulbs, thermometers, and barometers.[26]  The NIEHS, Food and Drug Administration ("FDA") and Environmental Protection Agency ("EPA") have also been studying the psychological effects of methylmercury, a type of organic mercury, on humans through consumption of fish.[27]  It has been found that consuming large quantities of mercury through foods like fish increases a person's exposure to mercury, and pregnant women who regularly eat fish high in mercury risk permanently damaging their developing fetuses.[28]  Their children may exhibit motor difficulties, sensory problems, and cognitive deficits.[29]  In 2004, and again in 2019, the EPA and FDA released a consumer advisory notice, advising that children avoid fish with high traces of methylmercury.[30]

15. Cadmium is a metal typically obtained from zinc byproducts and "recovered from spent nickel-cadmium batteries."[31]  The Agency for Toxic Substances and Disease Registry has

---

[22] *Id. See also Blood Levels in Children*, CDC (Feb. 9, 2021), https://www.cdc.gov/nceh/lead/prevention/blood-lead-levels.htm.
[23] Nicholas Rees, Richard Fuller, *The Toxic Truth: Children's Exposure to Lead Pollution Undermines a Generation of Future Potential*, UNICEF and PURE EARTH (Jul. 2020), https://www.unicef.org/sites/default/files/2020-07/The-toxic-truth-children%E2%80%99s-exposure-to-lead-pollution-2020.pdf.
[24] *Id.*
[25] *Mercury*, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/mercury/index.cfm.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Advice about Eating Fish – For Women Who Are or Might Become Pregnant, Breastfeeding Mothers, and Young Children*, FDA and EPA (Dec. 29, 2020), https://www.fda.gov/food/metals-and-your-food/fdaepa-2004-advice-what-you-need-know-about-mercury-fish-and-shellfish; https://www.fda.gov/food/consumers/advice-about-eating-fish.
[31] *Cadmium*, OSHA, https://www.osha.gov/cadmium.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

4

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

listed cadmium as the seventh most significant potential threat to human health.[32]  Research has associated cadmium exposure with diminished IQ and attention deficit hyperactivity disorder ("ADHD").[33]

16. An August 16, 2018 article published by Consumer Reports (ConsumerReports.Org ["CR"]) revealed that heavy metals such as lead, mercury, arsenic, and cadmium are contained in many foods made just for babies and toddlers, "such as popular snacks, cereals, prepared entrees, and packaged fruits and vegetables." [34] James E. Rogers, Ph.D., the director of food safety research and testing at Consumer Reports, stated that, "[b]abies and toddlers are particularly vulnerable due to their smaller size and developing brains and organ systems."[35] "They also absorb more of the heavy metals that get into their bodies than adults do."[36]

17. A significant number of children in the United States eat a lot of packaged baby foods.[37] A CR national survey found that more than ninety percent (90%) of parents with children three-years or younger turn to packaged baby foods at least occasionally.[38]  Zion Market Research found that annual sales of baby foods topped $54 billion in 2018 and were projected to reach more than $76 billion by 2021.[39]

18. Exposure to even small amounts of heavy metals, including cadmium, lead, mercury, and arsenic, at an early age may increase the risk of several health problems, especially lower IQ and behavioral problems, and have also been linked to autism and ADHD.[40]  Victor Villarreal, Ph.D., an assistant professor in the department of educational psychology at the University of Texas at San Antonio, who has researched the effects of heavy metals on childhood

---

[32] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 12, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[33] Id.
[34] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.
[35] Id.
[36] Id.
[37] Id.
[38] Id.
[39] Id.
[40] Id.

COMPLAINT AND DEMAND FOR JURY TRIAL

development, stated that, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[41]  Researchers at Duke University looked at 565 adults who had their lead levels measured as children. [42]  Those with high childhood lead readings had IQ levels that were 4.25 points lower, on average, than participants with lower childhood lead readings.[43]  A Columbia University study of third-through fifth-graders in Maine found that students who had been exposed to arsenic in drinking water had IQ levels that were 5 to 6 points lower, on average, than students who had not been exposed.[44]

19. The risk from heavy metals grows over time as they accumulate in the kidneys and other internal organs.  Tunde Akinleye, a chemist in CR's Food Safety Division who led the testing, stated that, "[t]hese toxins can remain in your body for years."[45]  Regular consumption of even small amounts of toxic heavy metals over a long period of time may raise the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes; among other conditions. [46]  A recent study from the journal Lance Public Health suggests that low levels of lead from food and other sources contribute to about 400,000 deaths each year, more than half of them from cardiovascular disease.[47]  Getting too much methylmercury can cause nerve damage, muscle weakness, lack of coordination, and impaired vision and hearing.[48]  Over time, cadmium exposure can lead to kidney, bone, and lung disease.[49]

20. CR's food and safety team analyzed 50 nationally distributed packaged foods, including foods made by Defendant under the name "Parent's Choice," made for babies and toddlers and checked them for cadmium, lead, mercury, and inorganic arsenic, the type most harmful to health.[50]  The results were troubling.  Every product tested by CR had measurable levels of at least one of the following heavy metals: cadmium, inorganic arsenic, or lead. [51]

---

[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Moreover, about two-third (68%) had "worrisome" and "concerning" levels of at least one heavy metal.[52]  Fifteen of the foods tested would pose potential health risks to children who regularly eat just one serving or less per day.[53]  Two rice cereals contained measurable levels of methylmercury[54].  Research suggests that rice cereals may be an overlooked source of mercury in infants' diets: in a test of 119 infant cereals, researchers at Florida International University found that rice cereals had on average three times as much methylmercury as multigrain cereals and 19 times as much as other non-rice cereals.[55]

21. Products with rice, including Defendant's puffs, fared worst in the CR study because they contained worrisome amounts of inorganic arsenic, lead, and cadmium.[56]  As a category, snack foods – bars, cookies, crackers, crunches, crisps, rice rusks, teething biscuits, and puffs – were most problematic, generally because of their rice content.[57] This finding is especially concerning because snacks are the most common type of packaged product that babies and toddlers eat, according to CR's survey.[58]  About seventy-two percent (72%) of parents said they feed their child at least one of the types of snack foods CR tested.[59]  Moreover, organic foods were found to be just as likely to contain heavy metals as conventional foods.[60]

22. Defendant knew or should have known that its baby foods contain significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury.  Defendant knew or should have known that such toxic metals are not fit for consumption.  Defendant knew or should have known that its baby foods are detrimental to the health of babies.  Defendant had no reasonable ground for believing that their baby foods were free from toxic heavy metals, or that such toxic metals were appropriate for sale in baby foods.

23. Defendant intended to induce reasonable consumers to rely on its marketing, all of which explicitly and implicitly convey that Defendant's baby foods are healthy for

---

[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

7

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

consumption by babies. Such marketing includes words written on the containers of Defendant's baby foods, including, but not limited to, the actual name of the product, "Parent's Choice," as well as phrases such as the following:[61]

- o   "You'll love this Parent's Choice product. In fact, we guarantee it";
- o   "Since 1998, Walmart's Parent's Choice has been trusted by parents across the country to provide quality, affordable baby products";
- o   "perfect size and texture for your child's developing hands, mouth and teeth";
- o   "Great for baby's self-feed journey";
- o   "Great for You"
- o   "Organic";
- o   "Naturally flavored Gluten-Free";
- o   "No Artificial Colors";
- o   "Great Taste";
- o   "Easily Dissolves in baby's Mouth";
- o   "Made With Real Fruits and Vegetables"
- o   "USDA Organic"
- o   "Naturally Flavored"
- o   "Non GMO Project Verified"

24. The imagery used on Defendant's products also implicitly conveys that Defendant's baby foods are healthy for consumption by babies by depicting images of its foods' nourishing and wholesome ingredients, such as fruits, vegetables, and legumes, babies' items such as pacifiers, and healthy happy animals engaged in play. Below are just a few examples:

///

///

///

///

---

[61]https://www.walmart.com/search/?query=parent%27s%20choice%20baby%20food&typeahead=parent%27s%20choice

8







25. Plaintiff justifiably relied on Defendant's marketing.  Plaintiff suffered damages when they unknowingly purchased baby foods that contain toxic heavy metals and other undesirable toxins and contaminants.  Plaintiff's baby was harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

26. Defendant's false and misleading advertising deceives consumers into believing that they are purchasing and feeding their babies safe and nutritious baby foods and, through this

9

COMPLAINT AND DEMAND FOR JURY TRIAL

deception, Defendant seeks to induce consumers to purchase Defendant's baby foods when they would otherwise have purchased other baby foods that do not contain toxic heavy metals or other undesirable toxins and contaminants.

27. Defendant was aware that it was not providing their customers with healthy baby foods, yet it proceeded to advertise its baby foods as safe for consumption by babies. Defendant created the clear impression to its customers that they are purchasing and feeding their babies food that does not contain any toxic heavy metals or other undesirable toxins and contaminants. This behavior is therefore materially misleading, in that reasonable consumers would not understand that Parent's Choice baby foods contain any toxic heavy metals or other undesirable toxins and contaminants. Thousands of consumers have purchased Defendant's baby foods under the false belief that the baby foods are safe and nutritious for their babies and do not contain any toxic heavy metals or other undesirable toxins and contaminants. They have been misled. They have been deceived into purchasing dangerous baby food. They have inadvertently fed their babies dangerous baby food containing toxic heavy metals and other undesirable toxins and contaminants. Their babies were harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

28. Defendant knew that its customers trust the quality of its products and that customers expect Defendant's products to be free of toxic heavy metals and other undesirable toxins and contaminants. Defendant also knew that certain consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals and that these consumers will pay more for baby foods that they believe possess these qualities.

29. Defendant's knowledge that its customers trust the quality of its products, their expectations that Defendant's products will be free of toxic heavy metals and other undesirable toxins and contaminants, and their willingness to pay more for premium baby foods that are free from toxins, contaminants, or chemicals is evident in Defendant's business practices.

30. Defendant's promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising center on representations and pictures that are intended to,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

10

COMPLAINT AND DEMAND FOR JURY TRIAL

and do, convey to consumers that Defendant's baby foods possess certain qualities and characteristics that justify a premium price.

31. Defendant's website contains the following webpages, making countless claims that Defendant's baby foods are not only healthy and safe for babies, but also implying that Defendant's organic baby foods are comparative if not superior to other baby foods:[62]

Walmart ✦     🔍 Search Walmart.com     🔍

## Product Overview



### ABOUT LITTLE PUFFS® PUFFED GRAIN SNACKS, STRAWBERRY APPLE

**Compare to Gerber®**[1]

Little Puffs® Puffed Grain Snacks, Strawberry Apple, are for children who are beginning to self-feed, and are a great way to introduce your child to new tastes and textures. At the same time, parents can be confident about the nutritional value of Little Puffs®, which are made with whole grains, have 10 vitamins and minerals, and are sweetened with fruit juice.

## Features

Little Puffs® make a tasty snack for children who are learning about solid foods and their textures and tastes. FOR YOUR INFORMATION: This product should only be given to children who are familiar with eating solid foods. Children should be seated and supervised while eating. Package not intended as a toy.

• Vitamin D, E, Iron, Zinc and 5 B Vitamins
• No Artificial Colors or Flavors

Your child may be ready to use this product if she or he:
• Crawls with stomach off the floor
• Begins to self-feed with fingers
• Begins to use jaw to mash food

///

///

///

///

///

---

[62] *Parent's Choice Little Hearts Puffed Grain Snack, Strawberry Apple*, WALMART, https://www.walmart.com/ip/Parent-s-Choice-Little-Hearts-Puffed-Grain-Snack-Strawberry-Apple-1-48-oz/38763848; *Parent's Choice Organic Stage 2, Banana Baby Snack*, WALMART, https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884.

## COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

## About This Item

**We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

Parent's Choice Banana Rice Rusks, Stage 2, 6+ Months, are a delicious, handy snack for children who are beginning to feed themselves and for when the family is on the move. The banana -flavored rusks, which contain no artificial colors, not only taste great but also will dissolve easily in your little one's mouth. These gluten-free organic snacks are designed to be the ideal size and texture for your child's developing hands, mouth, and teeth. They are formulated for children who are 6 months and older. Each package comes with 12 individually wrapped packs of 2 rusks each, giving you a supply of a satisfying treat for your child when you're at home or on the go. Parent's Choice Banana Rice Rusks, Stage 2, 6+ Months, are a great snack option for children who are learning to feed themselves. Since 1998, Walmart's Parent's Choice has been trusted by parents across the country to provide quality, affordable baby products. We offer a wide range of products including diapers, wipes, toiletries, baby food, formula and baby feeding products. With a quality guarantee to back up all its baby, toddler, infant and newborn products, Parent's Choice takes care of your little one's needs for less. Stage 2 6+ months. This age is provided for guidance only. Parent's Choice Rice Rusks are for children beginning to self-feed or as an on-the-go snack. Each rusk is the perfect size and texture for your child's developing hands, mouth and teeth. Your child may be ready to use this product if he or she: Crawls with stomach off the floor Pulls self up to stand Self-feeds with fingers Uses jaw to mash food

- Naturally flavored
- Gluten-free rice snack
- Great for baby's self-feed journey
- Perfect size and texture for little hands, mouth, and teeth
- Convenient 12 individually wrapped 2-packs

32. Reasonable consumers seeing Defendant's marketed products would not expect the baby foods to contain toxic heavy metals or other undesirable toxins or contaminants.

33. Furthermore, reasonable consumers, including Plaintiff, would consider the mere inclusion of heavy metals or other undesirable toxins or contaminants a material misrepresentation when considering which baby food to purchase.

12

COMPLAINT AND DEMAND FOR JURY TRIAL

34. Defendant intended for consumers to rely on its marketing, and reasonable consumers, including Plaintiff, did in fact so rely.  Defendant's marketing and advertising is deceptive, misleading, unfair, false, and/or fraudulent because, among other things, the baby foods include undisclosed toxic heavy metals or other undesirable toxins or contaminants.

35. Defendant's baby foods do not have a disclaimer regarding the presence of toxic heavy metals or other undesirable toxins or contaminants that would inform consumers that the foods contain toxic heavy metals and/or that toxic heavy metals can accumulate overtime in a child's body to the point where poisoning, injury, and/or disease can occur.

36. Instead, Defendant's baby foods create the impression, by the content and images on their labels, that they are healthy for consumption, and preferable over other brands of baby foods.

37. Defendant's wrongful marketing and advertising, which includes misleading, deceptive, unfair, and false claims and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a price premium for baby foods that were not sold as advertised.  Defendant continues to wrongfully induce consumers to purchase its baby foods that are not as advertised.

38.  Defendant created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for its baby foods.  The marketing for the baby foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The marketing for the baby foods was designed to encourage consumers to purchase the baby foods and reasonably misled the reasonable consumer into purchasing the baby foods.

39. Defendant continues to wrongfully induce consumers to purchase its baby foods that are not as advertised.  Plaintiff would like to purchase healthy, wholesome food for their children in the future from manufacturers including Defendant, but cannot do so with any degree of certainty that these foods will not contain toxic heavy metals or other undesirable toxins or contaminants.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

13

COMPLAINT AND DEMAND FOR JURY TRIAL

40. Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class, who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's tainted baby foods.

41. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when they paid the purchase price or a price premium for baby foods that did not deliver what they promised. They paid the purchase price on the assumption that the labeling of the baby foods was accurate and that it was free of toxic heavy metals and safe to ingest. Plaintiff would not have paid this money or fed their baby food containing toxic heavy metals had they known the truth that Defendant's baby foods contain excessive degrees of toxic heavy metals. Damages can be calculated through expert testimony at trial.

## II.    THE PARTIES

42. Plaintiff is, and at all times relevant hereto has been, a citizen of the state of California.

43. Plaintiff Shipra Kochar ("Plaintiff Kochar") is a California resident residing in Dublin, California. Plaintiff Kochar purchased Parent's Choice baby foods repeatedly, including from a Walmart store in Rosewood, California, throughout 2020, with her last purchase in January 2021. Plaintiff Kochar believed she was feeding her baby healthy, nutritious food. Due to Defendant's false and misleading claims and omissions, Plaintiff Kochar was unaware that the baby food she fed her baby contained any level of toxic heavy metals. Plaintiff Kochar would not have purchased Defendant's baby food if she knew that Parent's Choice baby food contains toxic heavy metals and other undesired toxins and contaminants. Plaintiff Kochar inadvertently fed her baby foods that contain toxic heavy metals and other undesired toxins and contaminants. Plaintiff Kochar's baby was harmed or was placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

44. Defendant is incorporated in Delaware. Its headquarters are located at 702 Southwest 8th Street, Bentonville, Arizona 72716.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

45. Plaintiff is unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 100.  Plaintiff will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 100 if and when ascertained.  Plaintiff is informed and believe, and thereupon allege, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events alleged herein and that each of the Defendants sued herein as a DOE proximately caused injuries and damages to Plaintiff, their babies, and Class Members as set forth below.

### III.        JURISDICTION AND VENUE

46. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between Plaintiff and Defendant.

47. The Court has personal jurisdiction over Defendant because Plaintiff's and the Class Members' claims arise out Defendant's business activities conducted in the State of California.

48. Venue is appropriate in the Northern District of California under 28 U.S.C. § 1391(b)(2) because Plaintiff resides within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to Class Members residing in this district.

### IV.        FACTUAL ALLEGATIONS

49. Baby food manufacturers are free to set their own internal standards for toxic heavy metal content of their products.  They have set those standards at dangerously high levels and have often sold foods that exceed even those levels.

50. On February 4, 2021, the Subcommittee published a report detailing its findings that toxic heavy metals—including arsenic, cadmium, lead, and mercury—were present in significant levels in numerous commercial baby food products.

///

///

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

15

COMPLAINT AND DEMAND FOR JURY TRIAL

51. Defendant was one of seven baby food manufacturers from whom the Subcommittee requested internal documents and test results, but Defendant "refused to cooperate with the Subcommittee's investigation."[63]

52. As of now, there is no established safe level of inorganic arsenic consumption for babies.[64] However, organizations like Healthy Babies Bright Futures advocate for no measurable amount of inorganic arsenic in baby food.[65] Consumer Reports suggests setting inorganic arsenic levels as low as 3 parts per billion ("ppb").[66] The FDA has already set maximum inorganic arsenic levels at 10 ppb for bottled water.[67] The EPA has similarly set a 10 ppb inorganic arsenic cap on drinking water,[68] as have the European Union ("EU")[69] and the World Health Organization ("WHO")[70].

53. There is no federal standard for lead in baby food, but the FDA has set a 5 ppb lead standard for bottled water,[71] the WHO has set 10 ppb lead as a provisional guideline for drinking water,[72] and the EPA has set an action level of 15 ppb for lead in drinking water.[73] The

///

///

---

[64] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 51, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[65] Id. at 13. See also What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), www.healthybabyfood.org/sites/healthybabyfoods/files/2019 10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

[66] Id. at 13. See also Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says, CONSUMER REPORTS, (June 28, 2019), www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/); Arsenic and Lead Are in Your Fruit Juice: What You Need to Know, CONSUMER REPORTS (Jan. 30, 2019), www.consumerreports.org/food-safety/arsenic-and-lead-are-in-your-fruit-juice-what-you-need-to-know/.

[67] Arsenic in Food and Dietary Supplements, FDA, www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements.

[68] Drinking Water Requirements for States and Public Water Systems, EPA, www.epa.gov/dwreginfo/chemical-contaminant-rules.

[69] Arsenic (Q&A), EUROPEAN FOOD INFORMATION COUNCIL, www.eufic.org/en/food-safety/article/arsenic-qa.

[70] Arsenic, WHO (Feb. 15, 2018), www.who.int/news-room/fact-sheets/detail/arsenic.

[71] Lead in Food, Foodwares, and Dietary Supplements, FDA (Feb. 27, 2020), https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements#:~:text=The%20FDA%2C%20through%20its%20regulatory,is%20set%20at%205%20ppb.

[72] Lead in Drinking-Water at 14, WHO (2011), www.who.int/water_sanitation_health/dwq/chemicals/lead.pdf.

[73] Drinking Water Requirements for States and Public Water Systems, EPA, www.epa.gov/dwreginfo/lead-and-copper-rule.

16

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

FDA has also set standards for lead in juice (50 ppb) and candy (100 ppb).[74]  The European Union has set the maximum lead level in infant formula to 20 ppb.[75]

54. Outside the context of baby food, some regulations have taken action against cadmium.[76]  The EPA has a limit of 5 ppb in drinking water,[77] the FDA has set a limit of 5 ppb in bottled water,[78] and the WHO set a 3 ppb limit for cadmium in drinking water.[79]  Groups like Healthy Babies Bright Futures have set a goal of no measurable amount of cadmium in baby food.[80]  Consumer Reports has called for a limit of 1 ppb cadmium in fruit juices.[81]  The EU has set a limit ranging from 5–20 ppb cadmium for infant formula.[82]

55. Outside the context of baby food, some regulatory bodies have taken action against industries using excessive mercury in commonly used products.[83]  For example, the EPA set a maximum for mercury content in drinking water at 2 ppb,[84] and consumer advocates urge even stricter standards for baby food.  Indeed, Health Babies Bright Futures has called for a goal of no measurable amount of mercury in baby food.[85]

///

[74] https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements
[75] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 21, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[76] Id. at 29.
[77] Ground Water and Drinking Water, EPA, www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.
[78] 21 C.F.R. § 165 (2019), www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=165.110.
[79] Cadmium in Drinking-Water at 6, WHO (2011) (online at www.who.int/water_sanitation_health/water-quality/guidelines/chemicals/cadmium.pdf?ua=1)
[80] Healthy Babies Bright Futures, What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead at 9 (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).
[81] Consumer Reports Letter to FDA On Reducing Heavy Elements Like Arsenic, Lead, and Cadmium in Fruit Juices, CONSUMER REPORTS (Jan. 30, 2019), https://advocacy.consumerreports.org/research/consumer-reports-letter-to-fda-on-reducing-heavy-elements-like-arsenic-lead-and-cadmium-in-fruit-juices/.
[82] Setting Maximum Levels for Certain Contaminants in Foodstuffs at 28-9, EUROPEAN UNION (Dec. 19, 2006), https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:02006R1881-20150521.
[83] Id. at 32.
[84] Ground Water and Drinking Water, EPA, www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.
[85] What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

56. As previously mentioned, a study of 50 nationally distributed packaged baby foods by Consumer Reports, including foods made by Defendant, found that every product tested had measurable levels of at least one of the following heavy metals: cadmium, inorganic arsenic, or lead.[86]  The report found that products with rice, including Defendant's baby foods, fared worst in the CR study because they contained worrisome amounts of inorganic arsenic, lead, and cadmium.[87]

57. Additionally, although Defendant refused to cooperate with the Subcommittee's investigation, limited independent testing conducted by Healthy Babies Bright Futures indicates that Defendant's baby foods do, indeed, contain toxic heavy metals.[88]  The table below, divided into two halves and enlarged for ease of reference, breaks down the toxic heavy metal contents of two Parent's Choice products examined through independent testing:[89]

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Metro area where purchased | Retailer |
|---|---|---|---|---|---|---|---|---|---|
| Parent's Choice (Walmart) | Little Hearts Strawberry Yogurt Cereal Snack - Stage 3, 9+ months | Snack - other | 56.1 | – | 5.2 | 26.1 | 0.941 | Charlottesville, VA | Walmart |
| Parent's Choice (Walmart) | Organic Strawberry Rice Rusks - Stage 2, 6+ months | Snack - teething biscuits & rice rusks/cakes | 108 | 66 | 26.9 | 2.4 | 2.05 | Charlottesville, VA | Walmart |

| Brand | Food | Food type | Arsenic (total, ppb) |
|---|---|---|---|
| Parent's Choice (Walmart) | Little Hearts Strawberry Yogurt Cereal Snack - Stage 3, 9+ months | Snack - other | 56.1 |
| Parent's Choice (Walmart) | Organic Strawberry Rice Rusks - Stage 2, 6+ months | Snack - teething biscuits & rice rusks/cakes | 108 |

///

[86] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.
[87] *Id.*
[88] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 43, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[89] *Id.*

18

COMPLAINT AND DEMAND FOR JURY TRIAL

| Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Metro area where purchased | Retailer |
|---|---|---|---|---|---|---|
| 56.1 | -- | 5.2 | 26.1 | 0.941 | Charlottesville, VA | Walmart |
| 108 | 66 | 26.9 | 2.4 | 2.05 | Charlottesville, VA | Walmart |

58. As shown in the table, the first food tested, displayed in the top white row, is Parent's Choice's Little Hearts Strawberry Yogurt Cereal Snack, a food created for infants as young as nine months. This baby food contains 5.2 ppb lead, 26.1 ppb cadmium, and 0.941 ppb mercury. The second food tested, displayed in the bottom white row, is Parent's Choice's Organic Strawberry Rice Rusks, a food created for infants as young as six months. This baby food contains 66 ppb of inorganic arsenic, nearly 27 ppb lead, 2.4 ppb cadmium, and 2.05 ppb mercury.

59. This limited independent testing shows that two of Parent's Choice's popular baby foods contain toxic heavy metals in dangerously high amounts. As discussed, these four toxic heavy metals, when present and consumed in high amounts, have been shown to wreak havoc on developing children's cognitive development and physical health. Although Healthy Babies Bright Futures has advocated for absolutely no measurable amount of inorganic arsenic in baby food, Defendant's Strawberry Rice Rusks contain 66 ppb inorganic arsenic. Given that this limited testing has revealed that both of Defendant's baby foods that were tested contain toxic heavy metals in dangerously high amounts, and given Defendant's refusal to cooperate with the Subcommittee's investigation, there is a great likelihood that additional comprehensive testing will show that other Parent's Choice baby foods also contain high traces of toxic heavy metals.

60. This concern is not merely speculative. For example, one of the independently tested foods, Parent's Choice's Strawberry Rice Rusks, contains organic rice flour.[90] The second food tested, Parent's Choice Strawberry Yogurt Cereal Snack, contains rice flour.[91] One of the

---

[90] *Parent's Choice Organic Stage 2, Strawberry Baby Snack*, WALMART, https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Strawberry-Baby-Snack-1-76-oz-Box/171533478.

[91] *Parent's Choice Little Hearts Puffed Grain Snack*, WALMART, https://www.walmart.com/ip/Parent-s-Choice-Little-Hearts-Puffed-Grain-Snack-Strawberry-Yogurt-1-48-oz/23739748.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

major baby food manufacturers that did cooperate with the Subcommittee, Beech-Nut, admitted that "the majority of its ingredients that tested over 100 ppb inorganic arsenic…were rice-based (either rice, *rice flour*, or organic)."[92]

61. Parent's Choice's Strawberry Yogurt Cereal Snack also contains whole wheat flour and whole oat flour.[93]  Another major baby food manufacturer that did cooperate with the Subcommittee's requests for internal testing and standards, Hain Celestial Group, Inc., admitted that two of its used ingredients that tested dangerously high in cadmium were oat flour and whole wheat flour.[94]  It also admitted that its whole wheat flour tested high for lead.[95]

62. One Parent's Choice product not included in independent testing but worth noting is Organic Brown Rice and Beans, a puree that comes in a squeezable packet and is intended for babies six months old and up.[96]  A primary ingredient in this product is organic long grain brown rice.[97]  The Subcommittee has reported that, "organic brown rice was the ingredient that tested highest in inorganic arsenic—309 ppb.  Indeed, the majority of one cooperating entity's ingredients that exceeded 100 ppb inorganic arsenic in testing were organic brown rice flour.[98] This finding raises concern that Parent's Choice's Organic Brown Rice and Beans puree may also contain high amounts of inorganic arsenic, and perhaps other toxic heavy metals, too.

63. Overall, Defendant's refusal to comply with governmental investigations and requests raises serious concerns as to whether its diverse array of baby foods contain unhealthy amounts of toxic heavy metals and put babies in danger.

64. Defendant's packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its baby foods throughout the United States, including California.

---

[92] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 57.
[93] *Parent's Choice Little Hearts Puffed Grain Snack*, WALMART, https://www.walmart.com/ip/Parent-s-Choice-Little-Hearts-Puffed-Grain-Snack-Strawberry-Yogurt-1-48-oz/23739748.
[94] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 30-31.
[95] *Id.* at 27.
[96] *Parent's Choice Organic Brown Rice & Beans*, WALMART, https://www.walmart.com/ip/Parent-s-Choice-Organic-Brown-Rice-Beans-Stage-2-3-5-oz-Pouch/169712781.
[97] *Id.*
[98] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 57.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

20

65. Defendant's baby foods are sold under the brand "Parent's Choice," implying that its brand is parents' first choice for their growing children.

66. Defendant's advertised mission is to nourish children with top quality, safe foods.

67. Defendant claims that, "Parent's Choice has been trusted by parents across the country to provide quality, affordable baby products. We offer a wide range of products including diapers, wipes, toiletries, baby food, formula and baby feeding products. With a quality guarantee to back up all its baby, toddler, infant and newborn products, Parent's Choice takes care of your little one's needs for less."[99]  The images below, and elsewhere within this Complaint, depict traditional advertising on Parent's Choice baby food products:







COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

68. Based on Defendant's decision to advertise, label, and market its baby foods as healthy, nutritious, and safe for consumption, it had a duty to ensure that these statements and the message portrayed by its labels' imagery were true and not misleading. As such, Defendant knew or should have known the baby foods included nondisclosed, dangerous levels of heavy metals, and that these toxins can accumulate over time.

69. The baby foods are available at Defendant stores around the country and are widely advertised. The marketing of the baby foods fails to disclose they contain or are at risk of containing any level of toxic heavy metals or other undesirable toxins or contaminants. Defendant intentionally omitted these contaminants to induce and mislead reasonable consumers to purchase its baby foods.

70. As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of toxic heavy metals in the baby foods without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

71. Defendant's marketing wrongfully conveys to consumers that its baby foods have certain superior quality and characteristics that they do not actually possess. While Defendant misleadingly causes consumers to believe its baby foods do not contain toxic heavy metals through its advertising statements and omissions, its baby foods do in fact contain undisclosed toxic heavy metals. This is, without a doubt, material information to reasonable consumers in that it would impact a consumer's decision to purchase the baby food in question.

72. Independent testing shows that at least some of Defendant's baby food products were found to contain dangerously varying levels of heavy toxic metals.

73. Defendant's marketing wrongfully fails to disclose to consumers the presence of toxic heavy metals in its baby foods.

74. Based on Defendant's deceiving marketing tactics, a reasonable consumer would not suspect the presence of toxic heavy metals, nor would a reasonable consumer be able to detect the presence of toxic heavy metals in Defendant's baby foods without conducting his or her own scientific tests or reviewing scientific testing conducted on said baby foods.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

75. Reasonable consumers must and do rely on Defendant to honestly report what its baby foods contain.

76. Defendant knew or should have known its baby foods contained toxic heavy metals. Defendant intended for consumers to rely on its marketing, and reasonable consumers did in fact so rely.

77. Defendant had a duty to ensure the baby foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed. Defendant breached this duty.

78. At all times during the Class Period, Defendant knew or should have known its baby foods contained toxic heavy metals and were not sufficiently tested for the presence of toxic heavy metals.

79. Defendant knew or should have known that it owed consumers a duty of care to adequately test for toxic heavy metals in its baby foods.

80. Defendant's baby foods had a risk of containing toxic heavy metals due to Defendant's failure to monitor for its presence in the ingredients and finished products.

81. Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of toxic heavy metals in its baby foods to the extent reasonably possible.

82. Defendant knew or should have known that consumers purchased its baby foods based on the reasonable expectation that Defendant manufactured the baby foods to the highest standards. Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the baby foods to the highest standards for preventing the inclusion of toxic heavy metals in its baby foods.

83. Defendant knew that toxic heavy metals are dangerous contaminants that pose health risks to humans, especially children.

84. Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class.

85. Pursuant to the foregoing, Defendant's marketing tactics are deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

23

COMPLAINT AND DEMAND FOR JURY TRIAL

86. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing tactics and omissions.

87. Reasonable consumers, like Plaintiff, would consider the inclusion of toxic heavy metals a material fact when considering which baby food to purchase.

88. Defendant knew that properly and sufficiently monitoring for toxic heavy metals in its ingredients was not only important, but critical.

89. Defendant also knew that monitoring toxic heavy metals was likewise important to its health-conscious consumers.

90. Finally, Defendant knew or should have known it could control the levels of toxic heavy metals in its baby foods by properly monitoring its ingredients for toxic heavy metals and adjusting any formulation or diet to reduce ingredients that contained higher levels of toxic heavy metals.

91. Defendant also knew it was not properly and sufficiently testing for toxic heavy metals in its baby foods.  Defendant knew its failure to properly and sufficiently test continued throughout the Class Period.

92. Defendant's marketing tactics were misleading due to Defendant's failure to properly and sufficiently monitor for and to disclose the risk of the presence of toxic heavy metals in Defendant's baby foods.

93. Defendant knew or should have known consumers paid premium prices and expected Defendant to regularly test for toxic heavy metals and sufficiently monitor the presence of toxic heavy metals in finished baby food products and ingredients.

94. At all times during the Class Period, Defendant did not consistently monitor or test for toxic heavy metals in its baby foods and ingredients.

95. Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of toxic heavy metals in its baby foods and ingredients.

96. Defendant knew or should have known its baby foods contained unmonitored levels of toxic heavy metals that were inconsistent with its marketing practices and representations to consumers.

24

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

97. Defendant knew or should have known that consumers expected it to ensure its baby foods were monitored and tested for toxic heavy metals to ensure compliance with its marketing practices and representations to consumers.

98. Defendant knew but failed to disclose its lack of regular testing and knowledge of the risk or presence of toxic heavy metals in its baby foods and ingredients.

99. Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Defendant's baby foods are healthy, nutritious, and made from the best ingredients, are subject to stringent quality control, and are free of toxic heavy metals.

100. Reasonable consumers, such as Plaintiff and the Class Members, would have no reason to doubt Defendant's statements regarding the quality of its baby foods.

101. As a result of Defendant's wrongful misrepresentations, which include misleading, deceptive, unfair, and false statements and omissions, Defendant has generated substantial sales of its baby foods.

102. Defendant's wrongful misrepresentations, which include misleading, deceptive, unfair, and false representations and omissions, allowed it to capitalize on and reap enormous profits from consumers who paid the purchase price or premium for products that were not as advertised.  This is not surprising given that annual sales of baby foods topped $54 billion in 2018 and were projected to reach more than $76 billion by 2021.[100]

103. Moreover, the organic baby food industry was valued at $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[101]  The incredible rise in consumer demand for organic baby food, such as the organic baby foods sold by Defendant, is "driven by ///

---

[100] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.
[101] *Laura Wood, North America Organic Baby Food Market Expected to Reach a Value of $3.32 Billion by 2024 with a CAGR of 9.6%,* BUSINESS WIRE (Jan. 20, 2020, 12:10 PM), https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com#:~:text=The%20publisher%20expects%20the%20market,using%20any%20chemicals%20or%20preservatives.

COMPLAINT AND DEMAND FOR JURY TRIAL

the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products." [102]

## V.     CLASS ACTION ALLEGATIONS

104.     Plaintiff brings this action individually and on behalf of the following Class:

> All consumers residing in California who purchased Parent's Choice baby foods from four years prior to the filing of this Complaint through entry of final judgment. (the "Class").

105.     Excluded from the Class are (a) Defendants, including any entity in which any of the Defendants have a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendant; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiff reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

106.     *Numerosity*. The members of the Class are so numerous that joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiff at this time, given the number of consumers of Defendant's baby food products in California, it stands to reason that the number of Class Members is at least in the thousands.  Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as sales records.

107.     *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

a. Whether Defendant owns, manufactures, distributes, and creates the marketing and advertising for Parent's Choice baby foods;

b. The level of toxic heavy metals and other undesirable toxins and contaminants contained in Defendant's baby foods;

[102] *Organic Baby Food Market – Growth, Trends, COVID-19 Impact, and Forecasts (2021-2016)*, MORDOR INTELLIGENCE (2020), https://www.mordorintelligence.com/industry-reports/organic-baby-food-market.

26

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

c.  Whether Defendant represented and continues to represent that its baby foods are healthy, nutritious, and safe for consumption;

d.  Whether Defendant represented and continues to represent that the manufacturing of its products is subjected to rigorous quality standards;

e.  Whether Defendant owed a duty of care to its customers to ensure that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

f.  Whether Defendant owed a duty to investigate that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

g.  Whether Defendant had a policy of ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

h.  Whether Defendant had a practice of ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

i.  Whether Defendant had a procedure for ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

j.  Whether Defendant knew or should have known that its baby foods contained toxic heavy metals and other undesirable toxins and contaminants;

k.  Whether Defendant owed a duty of care to ensure that its advertising, warranties, packaging, and labeling do not contain any false representations that Defendant's baby foods are healthy, nutritious, and safe for consumption;

l.  Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

m.  Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are likely to deceive a reasonable consumer;

n.  Whether Defendant had knowledge that its representations regarding the in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

///

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

o.  Whether Defendant continues to disseminate representations that its baby foods are healthy, nutritious, and safe for consumption despite knowledge that the representations are false, deceptive and misleading;

p.  Whether a representation that baby food is healthy, nutritious and safe for consumption and does not contain toxic heavy metals is material to a reasonable consumer;

q.  Whether Defendant's marketing tactics and representations of its baby foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

r.  The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled; and

s.  Whether Plaintiff and Class Members are entitled to damages, civil penalties and/or injunctive relief.

108.  *Typicality*.  Plaintiff' claims are typical of those of other Class Members because Plaintiff, like the other Class Members, purchased Defendant's baby foods based on the reasonable belief that they were healthy, nutritious, and safe for consumption by babies.  Plaintiff, as with other Class Members, were deceived by Defendant's misrepresentations and omissions of fact.

109.  *Adequacy of Representation*.  Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions.  Plaintiff intends to prosecute this action vigorously.  Plaintiff and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class Members will be fairly and adequately represented by Plaintiff and their counsel.

110.  *Superiority of Class Action*.  A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action.  The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

111. Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## VI.    CAUSES OF ACTION

### A.  **FIRST CAUSE OF ACTION**

NEGLIGENT MISREPRESENTATION

112. Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-111, as if fully alleged herein. In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

113. Plaintiff reasonably placed their trust and reliance in Defendant's representations that its baby foods were as advertised to Plaintiff and the Class, and were healthy, nutritious, safe for consumption, and did not contain toxic heavy metals.

114. Because of the relationship between the parties, Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of toxic heavy metals in its baby foods or, based upon its superior knowledge, to say enough to not be misleading.

115. Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of its baby foods.

116. Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by Defendant. A reasonable consumer would have relied on Defendant's warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the baby foods.

117. As a result of these misrepresentations, Plaintiff and the Class purchased the baby foods containing toxic heavy metals at a premium.

118.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing baby food.

119.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## B. SECOND CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

120.    Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-119, as if fully alleged herein.  In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

121.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling various types of baby food.

122.    Defendant, acting through its representatives or agents, delivered baby foods to its retail stores, distributors, and various other distribution channels.

123.    Defendant willfully, falsely, and knowingly misrepresented various material facts regarding the quality and contents of its baby foods.

124.    Rather than inform consumers of the truth regarding the existence of toxic heavy metals in its baby foods, Defendant engaged in misrepresentation.  Defendant misrepresented its baby foods as healthy and safe for consumption for developing babies. Defendant assured consumers that by buying its products, consumers were investing in the best quality products for their growing children.

125.    Defendant made these material misrepresentations to boost or maintain sales of its baby foods, and to falsely assure purchasers that by buying its products, consumers were purchasing foods superior to those made by competitors.  Defendant made false representations with knowledge of their falsity, as it was in the unique position to know exactly how its products were made and to what degree did those products contain toxic heavy metals. The false representations were material to consumers because the representations played a significant role in consumers' decision to invest in certain baby foods.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

30

COMPLAINT AND DEMAND FOR JURY TRIAL

126.    Plaintiff and the Class Members reasonably relied on Defendant's claims pertaining to its baby foods' healthfulness, quality, and safety, as all consumers who purchase baby foods reasonably rely on the manufacturer's representations with regards to the manufacturer's products.

127.    Plaintiff and Class Members had no way of knowing that Defendant was misrepresenting its baby foods' actual contents.

128.    Plaintiff and Class Members could not have discovered the misleading nature of Defendant's misrepresentations on their own, because Defendant was in exclusive possession of such information, and/or continued to advertise its products as safe, healthy, and nutritious for consumption by babies.

129.    Plaintiff and the Class Members had no reason to suspect Defendant of misrepresenting material information in its advertisements.

130.    Plaintiff and the Class Members did not have an independent duty to investigate Defendant's representations.

131.    Although Defendant, as the manufacturer and distributor of its baby foods, had a duty to ensure the accuracy of the representations it disseminated regarding its products' contents, Defendant did not fulfill these duties.

132.    Defendant was in a superior position to know the falsity and/or misleading nature of its representations.  As the manufacturer, Defendant is in sole possession of rigorous testing of its products and knew or should have known that its products contained dangerously high amounts of toxic heavy metals.

133.    Defendant misrepresented material facts partly to pad and protect its profits.  The benefits of falsely touting its baby foods as healthy and safe to eat came at the expense of Plaintiff and Class Members.

134.    Plaintiff and Class Members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth.  Plaintiff's and Class Members' actions were justified given Defendant's misrepresentations.

//

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Defendant was in exclusive control of material facts, and/or such facts were not known to average members of the public.

135.    Plaintiff and Class Members sustained injury due to the purchase of baby foods that did not live up to representations.  Plaintiff and Class Members sustained injury when they inadvertently fed their babies foods containing dangerous heavy metals.

136.    Plaintiff and Class Members are entitled to recover full or partial refunds due to Defendant's misrepresentations, amounts to be proven at trial.  Plaintiff and Class Members are also entitled to recover the costs and expenses they incurred in purchasing alternative baby foods due to Defendant's misrepresentations, also amounts to be determined at trial.  Plaintiff and Class members are entitled to recover costs and expenses associated with ensuring that their babies have not been harmed, as well as any costs and expenses associated with any treatments for Plaintiff's and Class Member's babies, amounts to be determined at trial.

137.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiff' and Class Members' rights and well-being, as well as the well-being of Plaintiff's and Class Members' babies, and in part to enrich itself in California at the expense of consumers.  Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor baby foods.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## C.  **THIRD CAUSE OF ACTION**

### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

### *Cal. Civ. Code § 1750, et seq.*

138.    Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-137, as if fully alleged herein.  In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

139.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of

32

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

140.    In accordance with the liberal application and construction of the CLRA, application of the CLRA to all class members is appropriate, given that Defendant's conduct as described herein originated from California, and consumers purchased or used the involved baby foods in California.

141.    Defendant is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "goods" as defined by Civil Code §§ 1761(a) and 1770.

142.    Plaintiff and the Class Members are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

143.    Defendant's acts and practices were intended to and did result in the sales of products to Plaintiff and the Class Members in violation of Civil Code § 1770, including:

    i.    Representing that goods or services have characteristics and uses that they do not have;

    ii.    Representing that goods or services are of a particular standard, quality, or grade when they are not;

    iii.    Advertising goods or services with intent not to sell them as advertised; and

    iv.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

144.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

145.    Had Defendant disclosed to Plaintiff and Class Members that its baby foods contained toxic heavy metals, often in amounts surpassing those recommended or deemed safe by multiple regulatory bodies, Plaintiff and the Class Members would have made different purchasing decisions.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

33

COMPLAINT AND DEMAND FOR JURY TRIAL

146.     Had Defendant disclosed the truth, it would have been unable to continue in the same course of business. So, Defendant represented that its baby foods were healthy, nutritious and safe for consumption by babies, who have been shown to be extremely susceptible to the harsh effects of exposure to toxic heavy metals. Plaintiff and the Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

147.     As a direct and proximate result of Defendant's violations of California Civil Code § 1770, Plaintiff, Class Members, and their babies have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Such monetary and non-monetary damages have arisen and will arise from not receiving the benefit of the bargain in purchasing Defendant's baby foods, and increased time and expense in having to purchase safer alternatives, determining whether their children have been negatively affected by consuming Defendant's baby foods, and medical, behavioral, educational, or other types of treatment for children who have been negatively affected by consuming Defendant's baby foods.

148.     In satisfaction of the requirements of California Civil Code § 1782(a), Plaintiff will send written notice to Defendant via certified or registered mail contemporaneously with the filing of this Complaint. Plaintiff will seek to amend the Complaint to seek relief under this cause of action once the requisite 30-day notice period has expired and to state that Plaintiff gave Defendant proper notice.

### D.  **FOURTH CAUSE OF ACTION**

VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

*Cal. Bus. & Prof. Code § 17500 et. seq.*

149.     Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-148, as if fully alleged herein. In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

150.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public. As discussed, Defendant

34

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

misrepresented its baby foods and the fact that they are healthy, nutritious and safe for babies to consume. It concealed the fact that its baby foods contain high traces of toxic heavy metals such as arsenic, lead, cadmium and/or mercury.

151.    Defendant disseminated uniform advertising regarding the contents of its baby foods in California. The advertising was inherently unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq. Such advertisements were intended to and likely did deceive the public for the reasons detailed herein.

152.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant continues to conceal the true nature of its baby foods. Not only has Defendant refused to cooperate with the Subcommittee's efforts to investigate the true nature of baby foods on the market, even after it was revealed through independent testing that Defendant baby foods do contain toxic heavy metals, Defendant failed to remove its tainted products from distribution, failed to let consumers know precisely what reforms, if any, it has been making to its standards to ensure that its baby foods will contain less-to-no toxic heavy metals, and failed to instigate a public information campaign to alert consumers of the fact that its baby foods contain toxic heavy metals. As such, Defendant continues to misrepresent the true nature of its products and continues to deceive consumers.

153.    In making and disseminating the statements alleged herein, Defendant knew or should have known that its advertisements were untrue and misleading in violation of California law. Plaintiff and other Class Members based their purchasing decisions on Defendant's omitted and misrepresented material facts. The revenues to Defendant attributable to products sold in those false and misleading advertisements amount to millions of dollars. Plaintiff and Class Members were injured in fact and lost money and property as a result.

154.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code § 17500, *et seq.*

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

155. As a result of Defendant's wrongful conduct, Plaintiff and the Class Members were induced to purchase Defendant's baby foods. Plaintiff and the Class Members are therefore entitled to restitution as appropriate for this cause of action.

156. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

### E. **FIFTH CAUSE OF ACTION**

VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

*Cal. Bus. & Prof. Code § 17200, et seq.*

157. Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-156, as if fully alleged herein. In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

158. In accordance with the liberal application and construction of the Unfair Competition Law ("UCL"), application of the UCL to all Class Members is appropriate, given that Defendant's conduct as described originated in California and Class Members purchased, used, and/or sustained damage to the baby foods involved in California.

159. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

160. Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

    i.    Knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

    ii.    Misrepresenting material information to consumers regarding Defendant's baby food products and their purported ability to offer a dose of nutrition to a baby's diet;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

36

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

iii.     Concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies; and

iv.     Using uniform, deceptive business practices, such as telling consumers via its websites or otherwise implying that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results.

161.     Defendant has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1750, *et seq.*, which include:

i.     Knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

ii.     Misrepresenting material information to consumers regarding Defendant's baby food products and their purported ability to offer a dose of nutrition to a baby's diet;

iii.     Concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies; and

iv.     Using uniform, deceptive business practices, such as telling consumers via its websites or otherwise implying that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results.

162.     Defendant violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of its baby foods.  As alleged more fully herein, Defendant's marketing and sale of baby foods, and more specifically its failure to inform customers of the presence of toxic heavy metals in said baby foods, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein.  Plaintiff reserves the right to allege other violations of the

37

COMPLAINT AND DEMAND FOR JURY TRIAL

law, which constitute other unlawful business acts and practices.  Defendant's conduct is ongoing and continues to this date.

163.    Defendant violated § 17200's prohibition against unfair conduct by failing to inform its customers about the true nature of its baby foods, and engaging in a pattern or practice of concealing those facts and urging its customers to purchase more of its baby foods based on the false belief that the foods remain safe to consume for babies, thereby depriving consumers of sufficient information to make an informed decision when purchasing baby food. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct – selling baby foods that, in many instances, put children at risk for severe developmental and health problems.  The impact of the practice against Plaintiff and the Class Members far outweighs any possible justification or motive on the part of Defendant.  The impact on Plaintiff and Class Members has been described. Defendant can have no possible justification for including a false inducement to purchase its products.  Plaintiff and Class Members could not reasonably have avoided this injury because they relied on Defendant's advertising as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do.  Defendant's false advertising is also violative of public policy, as expressed in the CLRA.

164.    Specifically, Plaintiff and Class Members paid hefty prices for Defendant's baby food products, believing that they were the most optimal options for growing children. Defendant has refused to admit that its products are indeed dangerous, and it continues to market and sell its products in California.  Defendant has engaged in this conduct at the expense of its customers' rights – Defendant could have provided customers with full information about its baby foods' actual contents, but it did not.

165.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors.  It misrepresented critical and material information to, and omitted critical and material information from, Plaintiff and Class Members, its competitors, and the marketplace – all to its unfair competitive advantage.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

166.     Defendant's business practices also constitute fraudulent conduct because they were likely to deceive, and did deceive, Class Members into purchasing certain baby foods with ingredients that could not allow for the baby foods to benefit children as advertised.

167.     Defendant's business practices, as alleged herein, also constitute fraudulent conduct because Defendant did not deliver the product it advertised.

168.     Defendant's representations and omissions in California were material because they were likely to deceive reasonable consumers.

169.     Plaintiff and Class Members did not know that the baby foods contained toxic heavy metals.  Accordingly, Defendant should not have omitted and/or misrepresented the facts surrounding the baby food's true contents.

170.     Defendant omitted and misrepresented material information pertaining to its baby foods' true contents to defraud the Class Members' by, among other things, maintaining market share, convincing Plaintiff and Class Members to purchase more of its products, and to otherwise ensure that Plaintiff and Class Members would not discover Defendant's underlying fraud regarding its omissions and misrepresentations regarding the baby food products.  As a result, Defendant violated Cal. Penal Code § 502.

171.     Defendant's fraud led to consumers paying for products that did not live up to reasonable expectations.  Consumers likely paid more for baby foods than they otherwise should have, and/or purchased baby foods manufactured by Defendant instead of one of Defendant's competitors.  None of this would have been necessary had consumers known the truth.

172.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and lost money or property.  They did not receive the benefit of the bargain in purchasing the baby foods, and they spent their own time and money dealing with purchasing safer baby food alternatives.  Additionally, Plaintiff's and Class Members' babies were harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

///

39

COMPLAINT AND DEMAND FOR JURY TRIAL

173.    Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law.  It recklessly disregarded Plaintiff's and Class Members' rights, and the health of Plaintiff's and Class Members' babies.  Defendant's knowledge of its baby foods containing toxic heavy metals put it on notice that its foods were not being sold as advertised.

174.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

## F.  SIXTH CAUSE OF ACTION

### FRAUD

175.    Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-174, as if fully alleged herein.  In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

176.    At the time Plaintiff and Class Members purchased Defendant's baby foods, Defendant did not disclose, but instead concealed and misrepresented, the true contents of its baby foods as discussed herein.

177.    Defendant affirmatively misrepresented its baby foods' contents by telling Plaintiff and the Class Members that its baby foods were healthy, nutritious, and safe for babies and children to eat, all of which are not true.

178.    Defendant omitted and concealed the fact that testing showed that its foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury.

179.    Defendant knew, or should have known, that its advertisements falsely portrayed to the consuming public that its baby foods were safe for consumption.

180.    Defendant knew that its omissions and misrepresentations regarding the contents of its baby foods were material since it dedicated advertising to create such

///

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

advertisements. Further, a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

181. Defendant, through its advertisements, has proven that it in fact intended to deceive Plaintiff and Class Members.

182. Plaintiff and Class Members did not know, nor could they have known through reasonable diligence, about Defendant's fraud. They also could not have known that companies as large as Defendant would repeatedly lie to the consuming public about its products' true nature without facing consequences. They also could not have known that baby food manufacturers like Defendant produce baby foods containing toxic heavy metals. Only after purchasing Defendant's products and the release of the February 2021 Subcommittee report did Plaintiff and the Class Members become aware of Defendant's fraud.

183. Plaintiff and Class Members are reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

184. Plaintiff and Class Members had a right to rely upon Defendant's representations because Defendant maintained monopolistic control over the true circumstances of its products' contents. Defendant selected the information available to the public regarding the contents of its products.

185. Plaintiff and Class Members sustained damages in relying on Defendant's omissions and misrepresentations. Plaintiff and Class Members have sustained actual losses and damages in a sum to be determined at trial, including punitive damages.

### G. **SEVENTH CAUSE OF ACTION**

### CONSTRUCTIVE FRAUD

186. Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-185, as if fully alleged herein. In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

187. At the time Plaintiff and Class Members purchased Defendant's baby foods, Defendant did not disclose the true contents of its baby foods – namely, the presence of toxic heavy metals.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

41

COMPLAINT AND DEMAND FOR JURY TRIAL

188.    Further, Defendant affirmatively represented that its baby foods were healthy, nutritious and safe for consumption.

189.    Defendant knew, or should have known, that the contents and safety of its baby foods were falsely portrayed to the consumer public.

190.    Defendant also knew that its omissions and misrepresentations regarding its baby foods were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

191.    Defendant had an obligation not to omit or misrepresent its baby foods' true contents because: (a) it had sole possession of information regarding the true contents of its baby foods; (b) it made affirmative misrepresentations regarding its baby foods' safety that misled consumers; (c) Plaintiff and Class Members reasonably relied upon Defendant to make full disclosures based upon the relationship between Plaintiff and Class Members; (d) Defendant had a duty to ensure the accuracy of the representations it disseminated regarding the baby foods' true contents; (e) Plaintiff and the Class Members had no way of knowing about Defendant's fraud until after purchasing the baby foods and the release of the February 2021 Subcommittee report; (f) Defendant was on notice of its baby food's toxicity as it was aware of the included toxic heavy metals in its baby foods; and (g) Defendant was further put on notice of its baby food's toxicity when the House Subcommittee released reports in February 2021 indicating the presence of toxic heavy metals in its baby foods.

192.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the presence of toxic heavy metals, nor could they have known about this fact when Defendant repeatedly advertised that its foods were healthy, natural and safe for consumption.

193.    Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions and inadvertently or intentionally exposing babies and children to toxic heavy metals.

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

194.     Plaintiff and Class Members had a right to rely upon Defendant's representations (and corresponding omissions) because Defendant maintained monopolistic control over what information regarding its baby foods was made known to the public.

195.     Defendant breached its duty to Plaintiff and Class Members to make full disclosures of the fact that its baby foods do, in fact, contain dangerous, heavy toxic metals in varying quantities.

196.     Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions, misrepresentations, and breach of its duty.   Plaintiff and Class Members have sustained actual losses and damages in a sum to be determined at trial.

### H. **EIGHTH CAUSE OF ACTION**

BREACH OF EXPRESS WARRANTY

*Cal. Comm. Code § 2313, et seq.*

197.     Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-196, as if fully alleged herein.  In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

198.     As set forth herein, Defendant made express representations to Plaintiff and the Class that its baby foods were healthy, nutritious, and safe for consumption.

199.     These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

200.     There was a sale of goods from Defendant to Plaintiff and the Class Members.

201.     On the basis of these express warranties, Defendant sold to Plaintiff and the Class Members baby foods.

202.     Defendant knowingly breached the express warranties by including toxic heavy metals in its baby foods.

203.     Defendant was on notice of this breach as it was aware of the included toxic heavy metals in its baby foods.

///

43

COMPLAINT AND DEMAND FOR JURY TRIAL

204.    Defendant was also on notice of this breach when the House Subcommittee released reports in February 2021 indicating the presence of toxic heavy metals in its baby foods.

205.    Privity exists because Defendant expressly warranted to Plaintiff and the Class that its baby foods were healthy, nutritious, and safe for consumption.

206.    Plaintiff and the Class members reasonably relied on the express warranties by Defendant.

207.    As a result of Defendant's breaches of its express warranties, Plaintiff and the Class sustained damages as they paid money for the baby foods that were not what Defendant represented.

208.    Plaintiff, on behalf of themselves and the Class, seek actual damages for Defendant's breach of warranty.

## I.    **NINTH CAUSE OF ACTION**

### BREACH OF IMPLIED WARRANTY

*Cal. Comm. Code § 2314, et seq.*

209.    Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-208 as if fully alleged herein.  In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

210.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class members.

211.    There was a sale of goods from Defendant to Plaintiff and the Class members.

212.    As set forth herein, Defendant marketed its baby foods to Plaintiff and the Class as healthy, nutritious and safe options for babies.  But the baby foods did not conform to these affirmations and promises because they contained toxic heavy metals at undisclosed, alarming levels.  These very promises became part of the basis of the bargain between the parties and thereby constituted a series of implied warranties.

///

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

44

213.    Defendant breached the implied warranties by selling the baby foods that failed to conform to the promises or affirmations of fact made on containers or in advertisements because each product contained toxic heavy metals.

214.    Defendant was on notice of this breach as it was aware of the inclusion of toxic heavy metals in its baby foods.

215.    Defendant was also on notice of this breach when the House Subcommittee released reports in February 2021 indicating the presence of toxic heavy metals in its baby foods.

216.    Privity exists because Defendant impliedly warranted to Plaintiff and the Class members through the warranting, packaging, advertising, marketing, and labeling that its baby foods were healthy, nutritious, and safe for consumption and by failing to make any mention of toxic heavy metals.  Plaintiff and the Class then relied on these implied warranties in making their purchases.

217.    As a result of Defendant's breach of its implied warranties of merchantability, Plaintiff and the Class sustained damages as they paid money for the baby foods that were not what Defendant represented.

218.    Plaintiff, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

**J.   TENTH CAUSE OF ACTION**

QUASI-CONTRACT / UNJUST ENRICHMENT

219.    Plaintiff, individually and on behalf of the Class, repeats and alleges Paragraphs 1-218 as if fully alleged herein. In the alternative, Plaintiff brings this claim on behalf of any potential Subclasses.

220.    Plaintiff and Class Members purchased Defendant's baby foods, and those baby foods were not as Defendant represented them to be, enticing Plaintiff and the Class to purchase the baby foods.   Had Plaintiff and the Class known of the fact that the baby foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury, they would not have purchased Defendant's baby food, but would rather purchase baby foods manufactured by
///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

one of Defendant's competitors.  Furthermore, Plaintiff would not have had to pay for safer alternatives after learning of the true contents of Defendant's baby foods.

221.     Accordingly, Plaintiff and Class Members were damaged, and Defendant was unjustly enriched, due to fraud, by the purchase price of those baby foods containing toxic heavy metals.

222.     Plaintiff and Class Members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

223.     Furthermore, Defendant's conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiff and the Class.  Defendant is therefore liable to pay punitive damages under California law.

## VII.     PRAYER FOR RELIEF

224.     WHEREFORE, Plaintiff, individually and on behalf of all other Class Members, respectfully requests that the Court enter an Order:

    i.    Declaring that this action is a proper class action, certifying the Classes and/or Subclasses as requested herein, designating Plaintiff as Class Representatives, and appointing Plaintiff' attorneys as Class Counsel;

    ii.    Enjoining Defendant from continuing the unfair business practices alleged in this Complaint;

    iii.    Ordering Defendant to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and the other Class Members, as allowable by law;

    iv.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

    v.    Ordering Defendant to pay attorneys' fees and costs of suit; and

    vi.    Ordering such other and further relief as may be just and proper.

///
///
///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

46

COMPLAINT AND DEMAND FOR JURY TRIAL

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff, on behalf of themselves and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: March 31, 2021                                    **WILSHIRE LAW FIRM**


By */s/ Cinela Aziz*
         Cinela Aziz
         *Attorney for Plaintiff and the Putative Class*

COMPLAINT AND DEMAND FOR JURY TRIAL